IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

TAMMY MORRIS,

       Plaintiff,

      vs.                                CIV No. 22-961 KK

KILOLO KIJAKAZI, Acting Commissioner
of the Social Security Administration,

       Defendant.

**MEMORANDUM OPINION AND ORDER[1]**

      THIS MATTER is before the Court upon Plaintiff's Motion to Remand (Doc. 16) and her Brief in Support (Doc. 17), both dated March 15, 2023, challenging the determination of the Acting Commissioner of the Social Security Administration ("the Commissioner") that Plaintiff is not entitled to disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-34. On June 14, 2023, the Commissioner filed a response, and on June 27, 2023, Plaintiff filed a reply. (Docs. 23, 24.) The Court has thoroughly reviewed the administrative record, the parties' briefs, and the relevant law, and for the reasons set forth below, finds that Plaintiff's motion is not well-taken and will be DENIED.

## I. BACKGROUND AND PROCEDURAL POSTURE

      On October 10, 2019, Plaintiff filed an initial application for disability insurance benefits. (*See* Administrative Record ("AR") 197–98.) Plaintiff alleged that she became disabled on June 18, 2019, due to arthritis, high blood pressure, bulging disc, sciatica, and sleep apnea. (AR 197, 237.) Plaintiff's application was denied at the initial level in January 2020 (AR 73–83), and at the reconsideration level in June 2021 (AR 85–92). Plaintiff requested a hearing (AR 132–37), which

---

[1] Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73, the parties have consented to the undersigned to conduct dispositive proceedings and order the entry of final judgment in this case. (Doc. 14.)

ALJ Michael Leppala conducted on March 16, 2022 (*see* AR 34–64). Plaintiff was represented by counsel and testified at the hearing, as did vocational expert Thomas Irons ("VE"). (AR 34–64.)

On May 3, 2022, the ALJ issued his decision, finding that Plaintiff was not disabled under the relevant sections of the Social Security Act. (AR 16–25.) Plaintiff requested that the Appeals Council review the ALJ's decision (AR 8–9), and on October 19, 2022, the Council denied the request for review (AR 1–4), which made the ALJ's decision the final decision of the Commissioner. *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). On December 19, 2022, Plaintiff filed the Complaint in this case seeking review of the Commissioner's decision. (Doc. 1.)

## II. LEGAL STANDARDS

### A. Standard of Review

The Court's review of the Commissioner's final decision is limited to determining whether substantial evidence supports the ALJ's factual findings and whether the ALJ applied the correct legal standards to evaluate the evidence. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004). In making these determinations, the Court must meticulously examine the entire record but may neither reweigh the evidence nor substitute its judgment for that of the agency. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007). In other words, the Court does not reexamine the issues *de novo*. *Sisco v. U.S. Dep't of Health & Human Servs.*, 10 F.3d 739, 741 (10th Cir. 1993).

The Court will not disturb the Commissioner's final decision if it correctly applies legal standards and is based on substantial evidence in the record. *Hamlin*, 365 F.3d at 1214. "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004) (quotation

omitted). It is "more than a scintilla, but less than a preponderance." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citation omitted). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted) or "constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted). The Court's examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (citation omitted).

"The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotation marks, brackets, and citation omitted omitted). Although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence," and "in addition to discussing the evidence supporting [her] decision, the ALJ also must discuss the uncontroverted evidence [she] chooses not to rely upon, as well as significantly probative evidence [she] rejects." *Clifton v. Chater*, 79 F.3d 1007, 1009–10 (10th Cir. 1996) (citations omitted). If the ALJ fails to do so, "the case must be remanded for the ALJ to set out [her] specific findings and [her] reasons for accepting or rejecting evidence[.]" *Id.* at 1010.

**B.   Disability Framework**

"Disability," as defined by the Social Security Act, is the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration ("SSA") has devised a five-step sequential evaluation process to determine

disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); *Wall v. Astrue*, 561 F.3d 1048, 1051-52 (10th Cir. 2009); 20 C.F.R. § 404.1520. If a finding of disability or non-disability is directed at any point, the SSA will not proceed through the remaining steps. *See Thomas*, 540 U.S. at 24. At the first three steps, the ALJ considers the claimant's current work activity and the severity of her impairment or combination of impairments. *See id.* at 24-25. If no finding is directed after the third step, the Commissioner must determine the claimant's residual functional capacity ("RFC"), or the most that she is able to do despite her limitations. *See* 20 C.F.R. §§ 404.1520(e), 404.1545(a). At step four, the claimant must prove that, based on her RFC, she is unable to perform the work she has done in the past. *See Thomas*, 540 U.S. at 25. If the claimant meets "the burden of establishing a prima facie case of disability[,] . . . the burden of proof shifts to the Commissioner at step five to show that" the claimant retains sufficient RFC "to perform work in the national economy, given [her] age, education and work experience." *Grogan*, 399 F.3d at 1261 (citation omitted); *see also Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## III.  THE ALJ'S DETERMINATION

The ALJ reviewed Plaintiff's DIB claim pursuant to the five-step sequential evaluation process. (AR 16–25.) First, ALJ Leppala found that Plaintiff met the SSA's insured status requirements through the relevant period and had not engaged in substantial gainful activity since her alleged onset date of June 18, 2019. (AR 18.) The ALJ found at step two that Plaintiff suffered from the severe impairments of "bilateral carpal tunnel syndrome, bilateral knee osteoarthritis, degenerative disc disease of the cervical and lumbosacral spine, essential hypertension, gastritis, duodenitis, and obesity." (AR 18.) Additionally, the ALJ found that Plaintiff had a "medically determinable mental impairment of depression [that did] not cause more than minimal limitation

in [her] ability to perform basic mental work activities and [was] therefore nonsevere." (AR 19.)

At step three, the ALJ concluded that Plaintiff did not have an impairment or combination of

impairments that met or medically equaled the criteria of listed impairments under Appendix 1 of

the SSA's regulations. (AR 21.)

At step four, the ALJ reviewed the evidence of record, including medical opinions and

evidence from treating and consulting providers, prior administrative findings, Plaintiff's own

subjective symptom evidence, and non-medical evidence from a third party. (*See* AR 21–24.)

Having done so, the ALJ concluded that Plaintiff possessed an RFC to

> [p]erform light work as defined in 20 [C.F.R.§] 404.1567(b) except [she] is capable
> of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying
> ten pounds, standing and/or walking for about six hours in an eight-hour workday,
> and sitting for about six hours in an eight-hour workday, all with normal breaks.
> [Plaintiff] is further limited to frequently climbing ramps or stairs, occasionally
> climbing ladders, ropes or scaffolds, frequently balancing, occasionally stooping,
> kneeling, crouching, and crawling, and frequent handling and fingering.

(AR 21.) Based on this RFC, the ALJ found that Plaintiff was capable of performing her past

relevant work as a retail manager. (AR 24.) The ALJ therefore concluded that Plaintiff "has not

been under a disability, as defined in the Social Security Act, from June 18, 2019, though the date

of [the ALJ's] decision." (AR 24.)

## IV. DISCUSSION

Plaintiff contends that remand is required because (1) the ALJ erred in finding that Plaintiff

could perform her past relevant work as a retail manager either as actually or as generally

performed (Doc. 17 at 3–6), (2) the ALJ failed to either include mental limitations he found

credible in his RFC or explain why he omitted them (*id*. at 7–12), and the ALJ ignored a treating

source's medical opinions (*id*. at 12–13). As explained hereinafter, the Court disagrees that the

ALJ committed reversible error and therefore affirms the Agency's unfavorable disability determination.

### A. The ALJ did not commit reversible error at step four, when he found that Plaintiff could perform her past relevant work as a retail manager as actually or generally performed.

A claimant is not disabled if she "retains the capacity to perform the particular functional demands and job duties peculiar to an individual job as . . . she actually performed it." Social Security Ruling ("SSR") 82–61, 1982 WL 31387, at *1 (Jan. 1, 1982). Nor is she disabled if she "can perform the functional demands and job duties as generally required by employers throughout the economy." *Id*. at *2. Plaintiff argues that remand for further proceedings, if not an immediate award of benefits is warranted because "the ALJ's dispositive step four finding was both fatally flawed and legally insufficient." (Doc. 17 at 6.) The Commissioner insists, however, that Plaintiff's arguments are inconsistent with the VE's testimony and with the Dictionary of Occupational Titles' ("DOT's") definition of her past relevant work. (Doc. 23 at 4–12.)

An ALJ's step-four analysis is comprised of three phases. *See Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). In phase one, the ALJ must evaluate the claimant's RFC. *Id*. (citation omitted). In phase two, "he must determine the physical and mental demands of the claimant's past relevant work." *Id*. (citation omitted). Finally, in phase three, he must "determine[] whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one." *Id*. (citations omitted).

Here, at phase one, the ALJ considered the medical and non-medical evidence and opinions and determined that Plaintiff had the RFC to perform a limited range of light work, including the ability to lift 20 pounds occasionally and 10 pounds frequently. (AR 21–24.) At phase two, the ALJ was required to make findings regarding the physical and mental demands of Plaintiff's past

relevant work. *Winfrey*, 92 F.3d at 1023 (citation omitted). To make the necessary findings at this phase, the ALJ was required to obtain adequate "factual information about those work demands which have a bearing on the medically established limitations." *Id.* at 1024 (citation omitted). To that end, the ALJ elicited testimony from Plaintiff regarding her previous work, including her job as a manager of a truck stop, and considered Plaintiff's Work History Report in which she described her job duties. (*See* AR 24, 42.) Finally, he asked the VE to classify Plaintiff's past relevant work as a manager of a truck stop (AR 57–58.) The VE classified that job as "manager, retail store[,] DOT code number . . . 185.167-046, light, skilled, [Specific Vocational Preparation ("SVP") level] 7." (AR 58.) The ALJ adopted the VE's classification, determining that Plaintiff "ha[d] past relevant work as a retail manager (DOT number 185.167-046, light with an SVP of 7)." (AR 24 (citation omitted).)

At phase three, the ALJ was required to determine whether Plaintiff could satisfy the demands of her past relevant work, given his findings at phases one and two. *See Winfrey*, 92 F.3d at 1023. With respect to that inquiry, the ALJ wrote:

> In comparing [Plaintiff's RFC] with the physical and mental demands of this work, I find that [Plaintiff] is able to perform it as actually and generally performed in the national economy (SSR 82-61 and 82-62). The vocational expert indicated an individual with [Plaintiff's] vocational profile and [RFC] could perform this *light* occupation. I accept the vocational expert's testimony in accordance with SSR 00-4p.

(AR 24 (emphasis added).) Thus, at first blush, the ALJ appears to have articulated findings with respect to each of the *Winfrey* phases.

### i.   Past Relevant Work as Actually Performed

Plaintiff insists that the ALJ's step-four finding that she was able to perform her past relevant work as actually performed was erroneous and insufficient. (Doc. 17 at 3–6.) In support, she relies primarily upon the November 2019 Work History Report that she completed as part of

her disability application. (*See id.* at 4–5 (citing AR 247).) As mentioned, the ALJ, too, referenced this report in his step-four finding. (*See* AR 24 (citing AR 247).) As relevant to the issues before the Court, Plaintiff's Work History Report described the duties she performed when working as a truck stop manager. (*See* AR 247.) For instance, she checked a box to indicate that she frequently lifted 25 pounds (*i.e.*, 1/3 to 2/3 of the workday, or for more than 3 hours, given that she worked 10 hours per day). (*See* AR 247).) Confusingly, Plaintiff *also* checked a box to indicate that the "heaviest weight" she lifted as a truck stop manager was 20 pounds.[2] (AR 247). In other words, Plaintiff reported that the weight she lifted for more than 3 hours per workday exceeded the heaviest weight she lifted. Plaintiff also reported that her lifting and carrying activities comprised of "stock[ing] shelves & cooler [and] unload[ing] a truck *2 times a week*, 2 to 3 pallets of stocks," but she did not specify how long it took her to unload the pallets or how much the items weighed. (AR 247 (emphasis added).)

Again, the ALJ's RFC assessment restricted Plaintiff to a limited range of light work, including "occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carrying ten pounds." (AR 21.) Without discussing inconsistencies in Plaintiff's reported lifting activities, the ALJ determined that she was "able to perform [the truck stop manager job] as actually and generally performed in the national economy (SSR 82-61 and 82-62)." (AR 24.) The ALJ acknowledged that the DOT placed the occupation of retail manager at the light exertional level. (AR 24.) Plaintiff emphasizes that lifting 25 pounds frequently, as she reported in her Work History report, is inconsistent with work at the *light* exertional level. (Doc. 17 at 4 (citing 20 C.F.R.

---

[2] The inconsistencies in Plaintiff's Work History Report may in part be a product of the limited checkbox options. For example, the form provided the options of 10 pounds or 20 pounds for describing the "heaviest weight lifted," but provided the options of 10 pounds or *25 pounds* for reporting the weight "frequently lifted." (*See* AR 247.) It is not, for instance, clear from the record whether Plaintiff would have selected 20 pounds as the weight "frequently lifted" had it been an option.

§ 404.1567(b), (c)).) It follows, Plaintiff suggests, that she could not perform her past relevant work as she *actually performed* that job. (*Id*. (citing AR 25).)

The Commissioner only briefly responds to Plaintiff's arguments, conceding that "*on occasion*, Plaintiff *actually performed*" the job of retail manager "at a higher exertional level" than the DOT describes. (Doc. 23 at 10.) Still, the Commissioner maintains that the ALJ adequately articulated his step-four findings and that, in any event, any error in the ALJ's "as performed" analysis was rendered harmless by his subsequent finding that Plaintiff could perform the occupation of retail manager as generally performed. (*Id*. at 5–10.)

To the extent Plaintiff argues that the ALJ failed to adequately explain or support his finding that she could perform her retail manager job as that job was actually performed, the Court agrees. SSR 82-62 provides that "[t]he decision as to whether the claimant retains the functional capacity to perform past work which has current relevance has far-reaching implications and must be developed and explained fully in the disability decision." SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982). Despite the inconsistencies in Plaintiff's Work History Report and the exertional level the DOT assigned to the occupation of retail manager, the ALJ offered essentially no discussion of the demands of Plaintiff's past relevant work as it was actually performed. (*See* AR 24.)

The Commissioner suggests that the ALJ's failure to explain the basis of his past relevant work finding can be forgiven because the ALJ relied on testimony from a VE. (*See* Doc. 23 at 6–12.) The relevant regulations permit an ALJ to obtain and rely upon the testimony of a VE in determining whether a claimant can perform her past relevant work given her RFC. *See* 20 C.F.R. § 404.1560(b)(2); 20 C.F.R. § 1566(e). Indeed, a VE is permitted to "offer relevant evidence within his . . . expertise or knowledge concerning the physical and mental demands of [the] claimant's

past relevant work, either as the claimant actually performed it or as generally performed in the national economy." 20 C.F.R. § 404.1560(b)(2). As the regulations acknowledge, such testimony can be "helpful in supplementing or evaluating the accuracy of the claimant's description of his past work" and may take the form of "expert opinion testimony in response to a hypothetical question about whether a person . . . can meet the demands of the claimant's previous work." *Id*.

Although the ALJ did opt to supplement Plaintiff's testimony and Work History Report with expert testimony from a VE, that testimony did not extend to Plaintiff's ability to perform the job of retail manager as she previously performed that job. (*See* AR 58–62.) At the ALJ's request, the VE classified Plaintiff's past relevant work at the truck stop, testifying that the job was "a manager, retail store . . . . DOT code number is 185.167-046, light, skilled, SVP 7." (AR 58.) The VE did not, however, explicitly state that Plaintiff's past relevant work as a retail manager was *actually performed* at the light exertional level. (*See* AR 58.) In contrast, the VE specified that Plaintiff had performed a *different* job, buyer assistant, at the light exertional level even though the "DOT would classify it as sedentary." (AR 58.)  But the ALJ was silent as to any differences between the retail manager job as performed and as classified by the DOT. (*See* AR 58.) Critically, the ALJ did not ask any questions to develop the VE's testimony in this regard, nor did he ask the VE to evaluate the accuracy of Plaintiff's description of her past work in her Work History Reports of testimony. (*See* AR 43–61.)

The ALJ *did* instruct the VE to assume a hypothetical individual was restricted to a limited range of light work that was consistent with his ultimate RFC assessment[3] and asked whether that

---

[3] Consistent with her RFC assessment, the ALJ asked the VE whether a "hypothetical individual [at Plaintiff's] age and [with her] education, . . . [and who was] capable of occasionally lifting and/or carrying 20 pounds, frequently lifting and/or carry[ing] 10 pounds, standing and/or walking for about six hours in an eight-hour workday and sitting for about six hours in an eight-hour workday, all with normal breaks[,] . . . frequently climbing ramps or stairs, occasionally climbing ladders, ropes or scaffolds, frequently balancing, [and] occasionally stooping, kneeling, crouching and crawling . . . [could] perform any or all of [Plaintiff's] past work." (AR 59.) Although not included in that hypothetical, the ALJ also asked the VE to specify the "handling and fingering requirements" of Plaintiff's past

hypothetical individual could perform Plaintiff's past relevant work as a retail manager. (AR 59.) The VE responded that such an individual *could* perform Plaintiff's past relevant work as a retail manager. (AR 59.) But, again, the VE did not specify whether the individual could perform that past relevant work *as actually performed*. (*See* AR 59.) Without providing any discussion of Plaintiff's past relevant work as actually performed, the ALJ, in turn, cited the VE's testimony with approval in the final phases of his step-four analysis, indicating that he "accept[ed] the vocational expert's testimony in accordance with SSR 00-4p[,]" to support his own findings. (AR 24.) The VE stated that he compared Plaintiff's RFC with the physical and mental demands of a retail manager and concluded that Plaintiff was "able to perform [that job] as actually and generally performed in the national economy." (AR 24.) Notably, *Winfrey* cautioned against allowing an ALJ to delegate his step-four findings to the VE. *Winfrey*, 92 F.3d. at 1025. As the court in *Winfrey* explained, "[w]hen . . . the ALJ makes findings only about the claimant's limitations, and the remainder of the step four assessment takes place in the VE's head, we are left with nothing to review." *Id*. Here, the ALJ did not make explicit how he arrived at his "as performed" finding, and his reasoning appears to have taken place either in his own head or that of the VE. (*See* AR 24, 57–62.) Accordingly, the Court agrees with Plaintiff that insofar as the ALJ determined that Plaintiff was able to meet the physical demands of her past relevant work as a retail manager as that job was actually performed, his finding was not adequately articulated or supported by substantial evidence.

Nevertheless, as discussed below, the Court is satisfied that the ALJ's alternative step-four finding – that Plaintiff could perform her past relevant work as *generally performed* – was both supported by substantial evidence and free from legal error. *See infra* Part IV.A.ii. Critically, this

---

relevant work, to which the VE responded that a "manager retail store" was required to reach occasionally, handle frequently, and finger occasionally. (AR 59.)

subsequent finding serves as a sufficient basis for the ALJ's determination that Plaintiff was "not disabled" at step four of the sequential evaluation process, regardless of whether she could still perform that same job as she actually performed it. *See Dumas v. Colvin*, 585 F. App'x 958, 960 (10th Cir. 2014) (affirming the district court's holding that even if the ALJ erred in determining that the claimant retained the RFC for a line attendant job as he actually performed it, such an error was harmless where the ALJ also found that the plaintiff could perform the line attendant job as generally performed in the national economy). In short, any error by the ALJ in finding Plaintiff capable of performing her job as a retail manager as the job was actually performed constitutes harmless error.

### ii. Past Relevant Work as Generally Performed

Plaintiff argues that the ALJ's determination that she could perform the occupation of retail manager as it is generally performed was equally flawed. (Doc. 17 at 4–5.) Specifically, she maintains that "the ALJ was legally prohibited" from determining whether she was capable of performing the job of retail manager as it is generally performed in the national economy, because that job was a composite job.[4] (*Id.* at 4.) The Commissioner, in contrast, argues that Plaintiff's argument misconstrues the regulations, case law, and the DOT's definition of the retail manager occupation. (Doc. 23 at 5.)

"[C]omposite jobs have significant elements of two or more occupations and, as such, have no counterpart in the DOT." SSR 82-61, 1982 WL 31387, at *2 (Jan. 1, 2016). A claimant's past relevant work "may be a composite job if it takes multiple DOT occupations to locate the main

---

[4] Technically, a determination that a job qualifies as a composite job would affect both prongs of the past-relevant work analysis: (1) the claimant is capable of performing a composite job as actually performed only if she can perform all parts of the job; and (2) the ALJ may not evaluate whether the claimant can perform a composite job as it is generally performed in the national economy, because a composite job does not have a DOT counterpart. *See* POMS DI 25005.020(B). However, because the Court rejects Plaintiff's position that her past relevant work was a composite job, it takes up the issue only in the context of the ALJ's "as generally performed" analysis.

duties of the [past relevant work] as described by the claimant." POMS DI 25005.020(B). According to Plaintiff, the Social Security Administration issued a "very significant official statement to its adjudicators" in October 2011. (Doc. 17 at 4 (citing POMS DI 25005.020(B)).) That is, the Agency clarified that ALJs must not evaluate composite jobs when determining whether a claimant can perform past relevant work as generally performed in the national economy. POMS DI 25005.020(B). Put another way, an ALJ may render an unfavorable disability finding on the basis that a claimant remains capable of performing a composite job *as actually performed* but may not render an unfavorable finding on the basis that the claimant remains capable of performing a composite job *as generally performed* in the national economy. *See id.*

Here, in addition to emptying a truck and stocking shelves and a cooler, Plaintiff indicated in her Work History Report that she managed the truck stop, did reports, handled cash, ran the register, supervised six to eight employees, and hired and fired employees. (AR 247.) Similarly, she testified that she handled "the day-to-day, money, hiring, running the store, placing orders" and that she was responsible for terminating employees and performing the work of the employees she supervised when they would "call in." (AR 42.) Given these duties, Plaintiff submits that she was essentially performing the duties of three different jobs identified in the DOT: retail manager (DOT 185.167-046, 1991 WL 671299), retail stock clerk (DOT 299.367-014, 1991 WL 672631), and retail cashier (DOT 211.462-010, 1991 WL 671840). (Doc. 17 at 5.) As such, Plaintiff insists that her past relevant work was a composite job for which the ALJ was prohibited from making a "generally performed" finding. (*Id.*)

The VE considered the vocational evidence, including Plaintiff's testimony describing her work as a truck stop manager. (*See* AR 42–43, 57–58). Having done so, the VE advised the ALJ that he had the requisite information, and he classified that occupation as a retail manager (DOT

185.167-046), which he described as "light, skilled, SVP 7." (AR 43, 58.) Neither the VE nor the ALJ made an express determination that Plaintiff's past relevant work was a composite job, however. (*See* AR 24, 58.) Instead, the VE unequivocally testified, and the ALJ found, that the job fit within the DOT's definition of retail manager. (*See* AR 24, 58.) Neither relied on more than one DOT description to locate the main duties of Plaintiff's past relevant work as a manager of a truck stop. (*See* AR 24, 58.)

In assessing whether an ALJ correctly categorized a claimant's occupation, an "ALJ may rely on the [DOT's] job description for [the] claimant's job category as 'presumptively applicable to a claimant's prior work.'" *Andrade v. Sec'y of Heath and Human Servs.*, 985 F.2d 1045, 1051 (10th Cir. 1993) (citing *Villa v. Heckler*, 797 F.2d 794, 798 (9th Cir. 1986); *DeLoatche v. Heckler*, 715 F.2d 148, 151 (4th Cir. 1983), *superseded by rule on other grounds as recognized in Rogers v. Kijakazi*, 62 F.4 872 (4th Cir. 2023); 20 C.F.R. § 404.1566(d)(1)). A claimant may only overcome a presumption that the DOT's description of a given occupation applies "by demonstrating that the duties in [her] particular line of work were not those envisaged by the drafters of the category" of work. *Id.* at 1051-52 (quoting *Villa*, 797 F.2d at 798). Plaintiff fails to overcome a presumption that the DOT's description of retail manager applies.

Rather, Plaintiff's description of her truck stop job duties is consistent with the DOT description of the occupation of retail manager. To summarize, Plaintiff reported that she served as the "lead worker" or "manager" of the truck stop, unloaded and stocked merchandise, completed reports, handled the day-to-day finances, operated the register, placed orders, supervised six to eight people 100% of the day, hired and fired employees, and performed the work of employees she supervised when needed. (AR 42, 247.) This description of her duties largely comports with those listed by the DOT for the occupation of retail manager, including supervising employees,

conducting inventories, reconciling cash with sales receipts, keeping operating records, ordering merchandise, interviewing, hiring, and training employees, preparing work schedules, assigning employee duties, and performing the work of subordinates as needed. *See* DOT 185.167-046, 1991 WL 671299, at *1 (Jan. 1, 2016). Plaintiff appears to suggest that because she performed stocking duties and operated the cash register, her past relevant work was a composite job. (*See* Doc. 17 at 5.) But the Court is not persuaded.

The Tenth Circuit's decision in *Andrade* is instructive. There, the claimant, a self-employed general contractor, testified that in addition to performing the usual light duties of a general contractor, he also performed heavy construction work, such as plumbing and carpentry. *Andrade*, 985 F.2d. at 1050-51. The claimant insisted that "S.S.R. 92-61 does not authorize the ALJ to consider only the lighter duties of [a] past job; rather, when considering whether claimant could perform his job as it is performed in the national economy, the ALJ must categorize claimant's occupation in a way that reflects all significant aspects of claimant's particular past job." *Id*. at 1051. The claimant went on to insist that the significant aspects of his past job included his performance of carpentry and plumbing in addition to the usual duties of a general contractor. *Id*. The Tenth Circuit rejected the claimant's argument, however, reasoning that "it is not enough to show that plumbing and carpentry were part of the claimant's particular job." *Id*. at 1052. Rather, the "claimant must show that the 'duties of his prior job were sufficiently distinct from the duties of a [general contractor] as described in the [DOT] to constitute a different line of work." *Id*. (quoting *Villa*, 797 F.2d at 798). As in *Andrade*, Plaintiff fails to meet her burden by simply suggesting that she also performed stocking and cashier duties in addition to her managerial duties. To prevail, she would need to, instead, demonstrate that her duties at the truck stop were *distinct* from those of a retail manager. *See Andrade*, 985 F.2d. at 1052. She fails to make such a showing.

Rather, the record supports the ALJ's conclusion that Plaintiff's past relevant work was properly classified as a retail manager, even though she sometimes performed stocking and cashiering and at times performed the work of the employees she was supervising. As a result, Plaintiff has failed to show that her past relevant work was a composite job or that the ALJ and VE failed to accurately classify it.

Nor has Plaintiff met her burden to show that she was unable to perform the occupation of retail manager as that job was generally performed. To be clear, the DOT defines retail manager as a job requiring "light work," or one that requires "[e]xerting up to 20 pound of force occasionally (. . . up to 1/3 of the time) and/or up to 10 pounds of force frequently (. . . from 1/3 to 2/3 of the time) and/or a negligible amount of force constantly ( . . . 2/3 or more of the time) to move objects." DOT 185.167-046, 1991 WL 671299. Under SSR 82-61, an ALJ is permitted to rely on DOT descriptions to define how a job is usually performed. SSR 82-61, 1982 WL 31387, at *2. SSR 82-61 acknowledges that "[a] former job performed . . . by the claimant may have involved functional demands and job duties significantly in excess of those generally required for the job by other employers throughout the national economy." SSR 82-61, 1982 WL 31387, at *2. Even if Plaintiff could not "perform the excessive functional demands and/or job duties actually required in the former job," if she could "perform the functional demands and job duties as generally required by employers throughout the economy, [she] should be found to be 'not disabled.'" *Id*. As such, even Plaintiff's reports that she frequently lifted 25 pounds in the performance of her job as a truck stop manager (AR 247) did not preclude the ALJ from finding that Plaintiff still could perform the occupation of retail manager at a light exertional level as it is generally performed in the national economy.

In sum, Plaintiff does not dispute that under the assessed RFC she retained the ability to perform light work and to lift 20 pounds occasionally and 10 pounds frequently. Relying upon the VE's testimony and the descriptions in the DOT, the ALJ determined that, given her RFC, Plaintiff could perform the job of retail manager as generally performed. (*See* AR 24.) Plaintiff fails to meet her burden to establish that this finding was in error. *See Andrade*, 985 F.2d at 1051; *Williams*, 844 F.2d at 751 & n.2 (at step four of the sequential evaluation process, a plaintiff bears the burden of establishing that her medical impairments prevented her from performing the work she had previously performed). Accordingly, and because any error by the ALJ in finding Plaintiff could perform her past relevant work as actually performed was harmless, the Court will not remand on Plaintiff's claimed step-four errors.

### B. The ALJ did not commit reversible error by failing to include mental limitations in his RFC or by failing to explain their omission.

Next, Plaintiff argues that that the ALJ erred by failing to account for limitations he found in her mental functioning at step two of his evaluation and by failing to explain why such mental limitations were omitted from his RFC assessment. (Doc. 17 at 7–13.) Notably, it is the ALJ's step-four discussion of her mental limitations, informed by his step-two findings related to the medically determinable but non-severe impairment of depression, that Plaintiff finds wanting. (*See id*. at 9.) Plaintiff characterizes the ALJ's error as a "failure to articulate." (*Id*. at 12.) In response, the Commissioner insists that the ALJ offered a thorough discussion of Plaintiff's mental functioning as part of his step-two analysis and that "nothing in [his] step-two finding indicate[d] that Plaintiff's mental impairment[] caused even minimal work-related limitations, let alone significant work related limitations that would need to be accounted for in the RFC finding." (Doc. 23 at 13, 16.) The Commissioner has the better of the arguments.

Employing a special technique proscribed for assessing the severity of mental impairments at step two, the ALJ rated Plaintiff's degree of functional limitation in "four broad functional areas" or under the "paragraph B criteria": (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, or maintaining pace; and (4) adapting or managing oneself. (*See* AR 19–20); *see also* 20 C.F.R. § 404.1520a(b)(2), (c)(1)–(4). The ALJ rated each of the paragraph B criteria on a five-point scale: none, mild, moderate, marked, extreme. (*See* AR 20); *see also* 20 C.F.R. § 404.1520a(c)(4). Only a rating of "extreme" would have indicated a limitation "incompatible with the ability to do any gainful activity." 20 C.F.R. § 404.1520a(c)(4). The ALJ found that Plaintiff had "no more than a mild limitation"[5] in each of the paragraph B criteria. (AR 19–21.) As a result, the ALJ found Plaintiff's mental impairment of depression non-severe. (AR 19); *see also* 20 C.F.R. § 404.1520a(d)(1) ("If we rate the degrees of your limitation as 'none' or 'mild, we will generally conclude that your impairment(s) is not severe, unless the evidence otherwise indicates that there is more than a minimal limitation in your ability to do basic work activities.")

The parties engage in an exercise of semantics surrounding the ALJ's use of the phrase "no more than a mild limitation." Plaintiff suggests that because the ALJ could have found no limitations, but did not, the phrase essentially meant mild limitations. (*See* Docs. 17 at 8, 9; 24 at 5.)  Defendant, on the other hand, suggests that the ALJ's finding was equivalent to indicating "no limitation[s]" or less than mild limitations. (*See* Doc. 23 at 17–18.) But the Court is satisfied that

---

[5] In one portion of her brief, Plaintiff argues that "there is no question whatsoever but that Plaintiff had mild to moderate mental functional limitations in all four areas of mental functioning." (Doc. 17 at 9 (citing AR 20).) There is nothing in the ALJ's decision to support such a finding, as the ALJ specified "no more than mild limitation[s]" with respect to each of the paragraph B criteria. (*See* AR 20.) Because other portions of Plaintiff's brief seem to concede as much, Plaintiff's suggestion that the ALJ found "mild to moderate" limitations is attributed to a clerical error. (*See, e.g.*, Doc. 17 at 9 ("[T]he ALJ[] fail[ed] to either adopt the *mild* limitations he found credible or to explain why these *mild* mental limitations were omitted from the RFC.") (emphasis added).)

the ALJ meant what he said:  that Plaintiff had "no more than mild limitations." Helpfully, the

ALJ articulated the bases for his paragraph B findings in considerable detail:

> [Plaintiff] is able to learn, recall, and use information. She has not alleged severe
> functional deficits in this area. There are no allegations of or evidence of
> learning disorders or cognitive deficits. Function reports indicate [Plaintiff] is able to handle
> finances, read, play games, and use a cellular telephone. . . . She was able to interact
> with others while performing past work with no allegations of interpersonal
> problems. [She] is able to interact with other people and perform activities outside
> her home such as attending appointments and shopping . . . . [She] denied any
> problems getting along with family, friends, neighbors, or others . . . . Medical
> records do not note any problems involving social functioning. . . . [There is] no
> evidence of cognitive deficits or other such problems. Examinations have noted
> normal attention and concentration . . . . [Plaintiff] indicated she is able to follow
> written instructions very well and spoken instructions fairly well . . . . [Plaintiff] is
> able to care for her own personal needs and perform a variety of daily activities . . .
> . She was able to regulate her emotions, control her behavior, and maintain well-
> being in prior work settings. Medical records do no reflect severe psychiatric
> symptoms, severe mood disturbance, or behavioral disturbance. [Plaintiff] indicated
> she is able to handle stress fairly well and adjust to changes . . . . Despite her
> combined impairments and symptoms, [Plaintiff] is able to care for her own personal
> needs, cook, clean, do laundry, drive a car, go shopping, handle finances and interact
> with others . . . .

(AR 20 (citing AR 251–59[6] (Plaintiff's 11/2/2019 Function Report), AR 260–69 (Rachael

Schaefer's 11/6/2019 Third Party Function Report), 280–87 (Plaintiff's 2/10/2021 Function

Report), 408–15 (Dec. 2019 consultative examination report from Dr. Athanasios Manole,

observing that Plaintiff was "alert and had appropriate eye contact, speech and mood" and that her

"memory and concentration were normal"), 577–81 (Nov. 2021 progress notes from San Juan

---

[6] Throughout his paragraph B findings, the ALJ cites Exhibits "C4F," "C5F," and "C9F" to support his descriptions
of Plaintiff's work-related mental abilities. (AR 20.) The records found at these citations, however, contain material
unrelated to Plaintiff's mental functioning. (*See* AR 399–405 (C4F: Sept. 2019 physical examination notes Superior
Physical Medicine), 406–07 (C5F: Oct. 2019 physical diagnoses by Superior Physical Medicine), 503–31 (C9F: Aug.
and Sept. 2021 physical therapy records)). The Court has determined from context that the records to which the ALJ
meant to refer are found at C4**E**, C5**E**, and C9**E**, and has therefore substituted these citations for the inaccurate ones.
(*See* AR 251–59 (C4E), 260–69 (C5E), 280–87 (C9E).) Also in this portion of his decision, the ALJ cites Exhibits
"C6F" and "C11F" to support his finding that "[e]xaminations have noted normal attention and concentration." (AR
at 20.) These citations, in contrast to the others, appear to be accurate. (*See* AR 408–15 (C6F: Dec. 2019 consultative
examination report from Dr. Athanasios Manole, observing that Plaintiff was "alert and had appropriate eye contact,
speech and mood" and that her "memory and concentration were normal"), 577–81 (C11F: Nov. 2021 progress notes
from San Juan Regional Neurosciences Spine Center reporting "[a]lert and cooperative; normal mood and affect;
normal attention span and concentration").

Regional Neurosciences Spine Center reporting "[a]lert and cooperative; normal mood and affect; normal attention span and concentration")).)

The ALJ also included in his step-two discussion a finding regarding Plaintiff's "mental functional ability to perform work." (*See* AR 20.) He explained that Plaintiff "is able to understand, carry out, and remember instructions and job tasks[;] to use judgment; [to] respond appropriately to supervisors, co-workers, and usual work situations; and [to] deal with changes in a routine work setting." (AR 20.) This analysis, offered on the heels of his paragraph B findings, is the type of analysis required in the context of an RFC assessment. *See* SSR 96-8p, 1996 WL 374184, at *6 (July 2, 1996) (enumerating the "[w]ork-related mental activities" that an ALJ must consider in assessing mental RFC, to include a claimant's abilities to "understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting").

Although there was nothing in the ALJ's step-two findings to suggest that Plaintiff's mental impairment caused work-related limitations, the ALJ acknowledged that a distinct mental RFC assessment was required at step four:

> The limitations identified in the "paragraph B" criteria are not [an RFC] but are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process. The mental [RFC] assessment used at steps [four] and [five] of the sequential evaluation process requires a more detailed assessment. The following [RFC] assessment reflects the degree of limitations I have found in the "paragraph B" mental function analysis.

(AR 20–21.) Plaintiff insists that this "boilerplate analysis cannot [be] substitute[d] for a reasoned [step-four] analysis." (Doc. 24 at 5 (citation omitted).) Relying upon the Tenth Circuit's decision in *Wells v. Colvin*, 727 F.3d 1061 (10th Cir. 2013),[7] as well as a slew of out-of-district cases,

---

[7] Plaintiff emphasizes that *Wells* is "precedential" and "controlling" and observes that the Social Security Administration did not issue an Acquiescence Ruling that would indicate that it found the Tenth Circuit's reasoning contrary to Agency policy (Doc. 17 at 9 (citing 20 C.F.R. § 404.985, SSR 13-2p, 2013 WL 621536, at *15, SSR 96-

Plaintiff insists that remand is required because the ALJ failed to explain at step four the impact of the mild mental limitations on her ability to perform past relevant work. (Docs. 17 at 8–10; 24 at 6–9.)

In *Wells*, the ALJ determined at step two that the claimant's "mental impairments would cause her no more than 'mild' limitations in each of the first three functional areas, and 'no' limitation in the fourth area." 727 F.3d at 1068. "[A]fter stating his conclusion that [the claimant's] mental impairments were non-severe, the ALJ stated that '[t]hese findings [did] not result in further limitations in work-related functions in the [RFC] assessment." *Id*. at 1069. Because the ALJ appeared to draw a connection between his finding of non-severity and his RFC findings, the Tenth Circuit found that his language "suggest[ed] that [he] may have relied on his step-two findings to conclude that [the claimant] had no limitation based on her mental impairments." *Id*. The Tenth Circuit explained that if this was the case, the ALJ's analysis "was inadequate under the regulations and the Commissioner's procedures." *Id*. In any event, the Tenth Circuit observed that the ALJ went on to discuss the claimant's mental impairments "to some degree" in his step-four credibility assessment. *Id*. at 1069. The Tenth Circuit acknowledged that the credibility "discussion, though far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more detailed assessment of [the claimant's] ability to complete various job functions as part of determining her RFC." *Id*. In the end, though, the ALJ's step-four findings as they related to the claimant's mental impairments were unsupported by substantial evidence. *Id*. at 1069–71. The Tenth Circuit summarized its holdings:

---

1p, 1996 WL 374182 (providing that if a circuit court issues a precedential decision conflicting with the Social Security Administration's interpretation of the Social Security Act or the regulations, the Agency will issue an Acquiescence Ruling).) Indeed, Plaintiff suggests that the absence of an Acquiescence Ruling in response to *Wells* "confirms that this published circuit court decision is in conformity with Agency policy." (Doc. 17 at 10.) The Commissioner does discuss *Wells* and relies instead on unpublished cases from the Tenth Circuit: *Suttles v. Colvin*, 543 F. App'x 824, 826–27 (10th Cir. 2013) and *Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013). (Doc. 23 at 18–19.)

> [T]o the extent the ALJ relied on his findings of non-severity as a substitute for
> adequate RFC analysis, the Commissioner's regulations demand a more thorough
> analysis. To the extent the ALJ intended his further statements about credibility to
> constitute a step-four mental RFC analysis, the conclusions he reached from these
> statements are not supported by substantial evidence.

*Id*. at 1071 (citing 20 C.F.R. §§ 404.1545(a)(2), 416.945(a)(2)).

*Wells* teaches that a step-two finding that Plaintiff's mental impairment was non-severe did not permit the ALJ to disregard that impairment when assessing her RFC. *See id.* at 1068-69. Indeed, the ALJ was charged with considering in his RFC assessment the combined effect of all medically determinable impairments, whether severe or not. *See* 20 C.F.R. § 404.1545(a)(2). "While a 'not severe' impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may—when considered with limitations or restrictions due to other impairments—be critical to the outcome of a claim." SSR 96-9p, 1996 WL 374184, at *5 (July 2, 1996). Here, where the ALJ found a medically determinable impairment of depression with "no more than mild limitation[s]" in the four broad areas of mental functioning, "[t]he question is, how much further discussion of [that] non-severe impairment [was] required at step four?" *See Wells*, 727 F.3d at 1064.

Plaintiff makes much of the fact that the ALJ's disability determination was premised on Plaintiff's ability to perform her past relevant work as a retail manager, an occupation that the DOT describes as skilled[8] work requiring a reasoning level of four.[9] (Doc. 17 at 11 (citing DOT

---

[8] Because the occupation of retail manager has a specific vocational preparation ("SVP") of seven (*see* DOT 185.167-046), it constitutes skilled work. *See* SSR 00-4p, 2000 WL 1898704, at *3 (Dec. 4, 2000) (explaining that "skilled work corresponds to an SVP of 5–9 in the DOT). According to the regulations, skilled work involves "dealing with people, facts, or figures or abstract ideas at a high level of complexity." 20 C.F.R. § 404.1568(c).

[9] The DOT provides that a claimant working at reasoning level four is required to "[a]pply principles of rational systems to solve practical problems and deal with a variety of concrete variables in situations where only limited standardization exists[ and to i]nterpret a variety of instructions furnished in written, oral, diagrammatic, or schedule form." DOT 185.167-046, 1991 WL 671299.

185.167-046).) Relatedly, Plaintiff suggests that the "varied and complex" duties required by her past relevant work would have challenged even mildly limited abilities to concentrate, persist, and maintain pace, to adapt and manage herself, and to interact with others. (*Id*.) Despite the skill required and the nature of her past relevant work, Plaintiff insists that "[t]he ALJ did not even attempt to explain how [she] could perform her past relevant skilled work with the mental limitations [the ALJ] found credible." (*Id*. at 10 (citing AR 24–25).) In support, Plaintiff attempts to draw similarities between the ALJ's decision here and the ALJ's decision in *Wells*, explaining in a parenthetical that remand was required in *Wells* "where mild mental functional limitations identified at steps two and three were omitted from the RFC without a valid explanation and the ALJ's step four findings depended on the claimant's ability to perform *skilled* and *semi-skilled* work." (Doc. 24 at 6 (emphasis added).)

Although *Wells* certainly offers guiding principles for reviewing the ALJ's consideration of Plaintiff's mental impairment, it was not the nature of the claimant's past relevant work – skilled or semi-skilled – that ultimately necessitated remand in *Wells*. *See Wells*, 727 F.3d at 1069–71. Rather, it was the ALJ's failure to offer an explanation supported by substantial evidence as to why he omitted mental limitations from Plaintiff's RFC. *Id*. As such, the Court focuses its inquiry on whether the ALJ adequately explained why the mild mental limitations he found at step two did not have any impact on Plaintiff's ability to perform her past relevant work.

At step four, the ALJ discussed evidence relating to Plaintiff's mental impairment. He concluded, for instance, that Plaintiff "ha[d] the mental functional ability to perform job tasks," noting that she was "able to care for her own personal needs, cook, clean, do laundry, drive a car,

go shopping, handle finances and interact with others." (AR 23 (citing AR 251–69, 280–87[10]).)

Moreover, he observed that at a December 2019 consultative medical evaluation, Plaintiff "had

normal speech, mood, memory, and concentration." (AR 23 (citing AR 410).) Turning to the

medical opinions, the ALJ discussed the prior administrative findings of the state psychological

consultants, which he found "persuasive, as they provided an overview of medical evidence, they

ha[d] extensive disability program knowledge, and the opinions [were] consistent with and

supported by the medical evidence of record." (AR 23 (citing AR 73–92).) The ALJ noted the state

agency consultants' findings that Plaintiff "does not have any severe psychiatric impairments."

(AR 23; *see also* AR 86–88.) The ALJ did not discuss any conflicting medical opinions that would

indicate Plaintiff had work-related mental limitations, and Plaintiff does not point to any such

opinions. In his RFC summary, the ALJ explained that Plaintiff "is fully capable of understanding,

carrying out, and remembering instructions and job tasks." (AR 24.) As can be seen from the

assessed RFC, the ALJ did not include any limitations on account of Plaintiff's mental impairment.

(AR 21.) He did not, for instance, limit Plaintiff's SVP or restrict her to simple job tasks. (*See* AR

21.) In other words, the ALJ's step-two finding of a "no more than mild" limitation in each of the

paragraph B criteria did "not . . . translate to a work-related functional limitation for purposes of

the RFC assessment." *See Beasley v. Colvin*, 520 F. App'x 748, 754 (10th Cir. 2013).

To summarize, the ALJ considered the impact of Plaintiff's mental impairments on her

work-related functioning, and he did so at both step two and step four. Although the ALJ's step-

two discussion of Plaintiff's mental impairment was arguably more comprehensive than his step-

four discussion, the Court is nevertheless satisfied that the ALJ adequately articulated a distinct

---

[10] As before, the ALJ cited "C4F," "C5F," and "C9F" to support this finding, but it is clear from context that he intended to cite C4**E**, C5**E**, and C9**E**, which contain the function reports of Plaintiff and her friend. (*Compare* AR 251–59, 260–69, 280–87, *with* AR 399–407, 503–31.) The Court has, therefore, substituted the correct citations.

analysis of the mental RFC assessment at step four. *See Wells*, 727 F.3d at 1069 (reasoning that the ALJ's step-four discussion of the claimant's mental limitations "though far from comprehensive, might have satisfied the ALJ's obligation at step four to provide a more detailed assessment of [the claimant's] ability to complete various job functions" if it had been "supported by substantial evidence"); *Suttles v. Colvin*, 543 F. App'x 824, 826 (10th Cir. 2013) (concluding that the ALJ's discussion of evidence related to the claimant's depression and his "pointed[]" omission of any mental limitation in the RFC sufficed, "though the ALJ admittedly could have been more explicit in tying the former discussion to the latter conclusion"). Relatedly, unlike the ALJ in *Wells*, the ALJ here did not conflate his duty at step two with his duty at step four. *See Wells*, 727 F.3d at 1065.

Because the ALJ adequately articulated in his RFC assessment why he found no work-related mental limitations, he was under no obligation to include a mental limitation to account for his step-two findings. *Beasley*, 520 F. App'x at 748 (reasoning that an ALJ is under "no obligation to include limitations in social functioning in [the claimant's] RFC based solely on his finding [at an earlier step] that she had 'moderate difficulties' in social functioning"). Alternatively, because there is nothing in the record to suggest that the ALJ ignored evidence about Plaintiff's mental impairments during the RFC finding or that Plaintiff's mental impairments caused any work-related limitations, any lack of articulation by the ALJ at step four was rendered harmless. Indeed, Plaintiff has not demonstrated any harm, where the ALJ offered a comprehensive discussion of her mental impairment, including her "mental functional ability to perform work," at step two of his decision. *See Bradley v. Colvin*, 643 F. App'x 674, 676 (10th Cir. 2016) (concluding that reversal was not required based on the ALJ's failure to articulate at step four his reasons for omitting a limitation from the RFC to account for the claimant's hand impairment, where the

record showed that the ALJ considered the hand impairment "in detail" at step two of his decision);
*see also Suttles,* 543 F. App'x at 827 (reasoning that "since there was no recognized limitation
regarding [the claimant's] mental functioning, there could be no error in failing to flesh out the
mental demands of his past work to compare with such a limitation."). For all of these reasons, the
Court will deny Plaintiff's motion on this ground.

### C. The ALJ did not commit reversible error by ignoring a treating medical source's opinion.

In her final ground for relief, Plaintiff argues that the ALJ failed to address opinions offered
by her treating nurse practitioner. (Doc. 17 at 12–13.) The Commissioner counters, insisting that
the statements identified by Plaintiff are not in fact medical source opinions. (Doc. 23 at 19–24.)

To be sure, an ALJ must "articulate in [his] determination or decision how persuasive [he
find[s] all of the medical opinions" of record. 20 C.F.R. § 404.1520c(b). At minimum, he must
"explain how [he] considered the supportability and consistency factors for a medical source's
opinions." *Id.* § 404.1520c(b)(2). If the ALJ's RFC finding "conflicts with an opinion from a
medical source, [he] must explain why the opinion was not adopted." SSR 96-8p, 1996 WL
374184, at *7. But, notably, the medical opinion assessment requirements apply only to evidence
that meets the criteria for a medical opinion. *See* 20 C.F.R. § 404.1520c(a).

Plaintiff points, first, to treatment notes from April 2021 and July 2021 visits with Anariza
Grush, CNP in which CNP Grush documented "Patient Plan[s]" to address Plaintiff's chronic back
pain and cervicalgia.[11] (Doc. 17 at 13 (citing AR 569, 573).) In those Patient Plans, CNP Grush
recommended, among other things, that Plaintiff "[a]void sitting as much as possible and avoid
slouching"; "[s]it up straight whenever [she has] to sit" and "[a]void lifting as much as possible."

---

[11] Cervicalgia is "pain in or around [a person's] spine beneath [their] head." https://my.clevelandclinic.org/health/symptoms/21179-neck-pain (last visited November 15, 2023).

(*Id.* (citing AR 569, 573).) Plaintiff also points to an early treatment note from a June 2018 visit with CNP Grush in which CNP Grush documented a "Patient Plan" for an injury to Plaintiff's left foot. (*Id.* (citing AR 354).) To address that injury, CNP Grush advised Plaintiff to "[e]levate [her] feet when resting." (AR 354.)

Plaintiff argues that the ALJ failed to address any of these so-called medical opinions, which she submits are at odds with the ALJ's RFC finding that she had an "unlimited ability to sit and could lift up to 20 pounds frequently." (Doc. 17 at 13 (citing AR 16–25).) More precisely, the ALJ's RFC restricted Plaintiff to "sitting for about six hours in an eight-hour workday," to "occasionally lifting and/or carrying 20 pounds," and to "frequently lifting and/or carrying ten pounds." (AR at 21.) Plaintiff concedes that the ALJ was not required to accept medical opinions from her treating nurse practitioner but maintains that he *was* required to evaluate them. (Doc. 17 at 13 (citing *Revels v. Berryhill*, 874 F.3d 648, 667–68 (9th Cir. 2017) (subsequent citations omitted)). Because the ALJ did not address any opinions by CNP Grush, or describe their persuasive value, Plaintiff maintains that remand is required. (*Id.*)

The Commissioner argues that Plaintiff "misconstrues the definition of medical opinion" and insists that the referenced entries in CNP Grush's treatment records do not constitute medical opinions. (Doc. 23 at 19–21.) A medical opinion, as defined by the relevant regulation, is "a statement from a medical source about what [a claimant] can still do despite [their] impairment(s) and whether [they] have one or more impairment-related limitations or restrictions in [enumerated] abilities." 20 C.F.R. § 404.1513(a)(2). Among the enumerated abilities are the ability "to perform physical demands of work activities, such as sitting, standing, walking, lifting, carrying, pushing, pulling, or other physical functions." *Id.* § 404.1513(a)(2)(i). Although an ALJ must consider all of the evidence in the record, additional "articulation requirements" apply when an ALJ evaluates

a medical opinion. *See* 20 C.F.R. § 404.1520c(b). First, "when a medical source provides multiple medical opinion(s)," the ALJ need not articulate how he considered each individual medical opinion; rather, he must "articulate how he considered the medical opinion(s) . . . from that medical source together in a single analysis." *Id*. § 404.1520c(b)(1). Second, while an ALJ must consider five factors when evaluating medical opinion evidence, *see id*. § 404.1520c(c)(1)–(5), he is generally only required to articulate his consideration of two of those factors: supportability and consistency. *Id*. § 404.1520c(b)(2). Third, if differing medical opinions are equally well-supported and consistent with the record, the ALJ must then "articulate how [he] considered the other most persuasive factors . . . for those medical opinions." *Id*. § 404.1520c(b)(3). Although an ALJ is "not required to discuss every piece of evidence," *see Clifton*, 79 F.3d at 1009–10, the duty to address the persuasive value of all medical opinion evidence of record is mandatory, *see* 20 C.F.R. § 404.1520c(b).

Other types of medical evidence, distinct from medical opinions, include "[o]bjective medical evidence" (*i.e.*, medical signs, laboratory findings, or both) and other medical evidence (*i.e.*, "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgment about the nature and severity of . . . impairments, . . . medical history, clinical findings, diagnoses, treatment prescribed with response, or prognosis"). 20 C.F.R. §§ 404.1513(a)(1), (3); 404.1502(f). Given these distinctions, the Commissioner contends, and the Court agrees, that the recommendations documented in CNP Grush's Patient Plans are not medical opinions. Instead, they appear to be judgments about the prescribed treatment for physical pain and injury. As the Commissioner observes, it is telling that Plaintiff plucks a handful of recommendations from CNP Grush's treatment records but does not characterize all of her recommendations as "medical opinions." (*See* Doc. 23 at 22.)

Turning first to CNP Grush's June 2018 recommendation that Plaintiff "[e]levate [her] feet when resting," the Commissioner notes that there is no indication that this advice "lasted for any particular duration, let alone into the period relevant to this case," which, given Plaintiff's June 18, 2019 alleged onset date, commenced a year later. (*Id*. at 21 (citing 20 C.F.R. § 404.1512(a)–(b)).) Relatedly, the Commissioner insists that there is nothing in the record to suggest that any recommendation for Plaintiff to elevate her feet lasted for twelve consecutive months. (Doc. 23 at 21 (citing 42 U.S.C. § 423(d)(1)(A)).) Indeed, the ALJ did not find a foot injury to be a medically-determinable impairment at step two of his analysis, and Plaintiff does not suggest that he should have. More fundamentally, CNP Grush's recommendation, on its face, applied to periods when Plaintiff was *resting*, not when she was working. Thus, the recommendation is not a statement about Plaintiff's work-related limitations.

As to CNP Grush's April 2021 and July 2021 recommendations that Plaintiff limit sitting and avoid lifting when possible, the Commissioner notes that these recommendations are only documented in two records, once to address back pain and once to address neck pain. (Doc. 23 at 21 (citing AR 569, 573).) The Commissioner maintains that, similar to CNP Grush's recommendation that Plaintiff elevate her feet, the record does not suggest that any alleged sitting or lifting limitations were enduring. (*Id*. (citing 42 U.S.C. § 423(d)(1)(A)).) Even apart from questions as to their endurance, the Court finds the recommendations vague in that they fail to quantify any impairment-related limitations or restrictions in Plaintiff's ability to sit or lift. They are not statements about what work-related activities Plaintiff could still perform despite impairments (e.g., a statement that Plaintiff could only sit for a certain number of hours per day or lift a specified amount of weight); they are advice to Plaintiff about what steps she could take, perhaps on a temporary basis, to ease or cope with physical pain or injury.

To support her position that the subject statements do not constitute medical opinions, the Commissioner likens this case to *Roy o/b/o Helton v. Comm'r, SSA*, No. 22-5036, 2022 WL 17726702 (10th Cir. Dec. 16, 2022). (Doc. 23 at 23.) In *Roy*, the claimant argued that the ALJ erred by not discussing a medical source's statement that related to the exacerbation of a tremor when she held out her arms, drew a spiral, made a straight line, or wrote by hand. 2022 WL 17726702, at *3. The Tenth Circuit found that the medical source's statement was "other medical evidence," rather than a "medical opinion." *Id*. In so finding, the court reasoned that "the statement [did] not provide any particular manipulative limitations or address what [the claimant] could still do despite her" impairment. *Id*. Because the subject statement did not qualify as a medical opinion, the court rejected the claimant's argument that the ALJ erred when he failed to discuss the statement. *Id*. According to the Commissioner, it follows that the Court here should likewise reject Plaintiff's argument concerning the recommendations by CNP Grush. The Court finds *Roy* persuasive, and agrees that CNP Grush's recommendations, like the doctor's statements about tremor exacerbation in *Roy*, constitute "other medical evidence," not medical opinions.

In her reply, Plaintiff submits that even if CNP Grush's recommendations do not qualify as medical opinions, they should not have been ignored by the ALJ. (Doc. 24 at 9 (citing 242 U.S.C. § 406(b)(1)). The standard outlining an ALJ's obligation to discuss the evidentiary record is well established:

> The record must demonstrate that the ALJ considered all of the evidence, but an ALJ is not required to discuss every piece of evidence. Rather, in addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence he rejects.

*Clifton*, 79 F.3d at 1009–10 (internal citations omitted).

Although Plaintiff observes that "[i]t is well-settled that an ALJ may not ignore evidence that contradicts his findings" (Doc. 24 at 9), she fails to identify precisely how CNP Grush's advice that she limit certain activities when possible contradicted the ALJ's findings in this case. While it is true that the assessed RFC limited Plaintiff to "sitting for about six hours in an eight-hour workday" and to only "occasionally lifting and/or carrying 20 pounds," and it is also true that on two occasions CNP Grush advised Plaintiff to limit sitting and lifting as much as possible, it is *not* clear that CNP Grush found Plaintiff more functionally limited than the ALJ. Given their context, CNP Grush's isolated recommendations were not probative evidence of Plaintiff's functional abilities, and they did not clearly contradict the ALJ's findings. As a result, the ALJ had no duty to discuss them. The Court will not remand on this final ground.

## V.  CONCLUSION

Having conducted a thorough review of the administrative record, the Court concludes that the ALJ did not legally err in his review of Plaintiff's application for DIB and that his findings are supported by substantial evidence. Accordingly, Plaintiff's Motion to Remand (Doc. 16) is DENIED.

**KIRTAN KHALSA**
**UNITED STATES MAGISTRATE JUDGE**
**Presiding by Consent**